IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Oneida Consumer, LLC, *et al.*,

                Plaintiffs,

    v.

Elyse Fox,

                Defendant.

Case No: 2:20-cv-2043

Judge Graham

<u>Opinion and Order</u>

This matter is before the court on plaintiff Oneida Consumer LLC's motion for a preliminary injunction. Oneida seeks a preliminary injunction to prevent defendant Elyse Fox from selling products bearing the ONEIDA trademark. Because the current record before the court demonstrates that Ms. Fox lawfully acquired the products and is attempting to resell them on terms to which Oneida previously agreed, plaintiff's motion is denied.

## I.  Background

Plaintiff Oneida is the owner of the ONEIDA trademark, which is associated with flatware and dinnerware. Oneida currently markets and sells its products through a network of authorized retailers, partners, dealers and resellers, as well as through Oneida's own website and third-party websites like Amazon. Eichhorn Decl. ¶ 3.

Oneida has not always handled its own marketing, distribution and selling of products. In 2009, Oneida entered into a Master License Agreement (MLA) with Robinson Home Products, Inc., whereby Robinson was granted the exclusive right and license to design, manufacture, market, distribute and sell ONEIDA-branded flatware and dinnerware products in the United States. <u>See</u> MLA (Doc. 22-2) § 2.1. Robinson paid royalties to Oneida on the products it sold. Oneida terminated the MLA and its relationship with Robinson in 2018.

Defendant Ms. Fox owns and operates Finest Flatware, doing business out of North Carolina. Fox Aff. ¶ 5. Ms. Fox began operating Finest Flatware in 2001 and first purchased and resold ONEIDA flatware in 2002. <u>Id</u>. ¶¶ 5-6. Her primary sales channels are through her own website, Amazon and eBay. <u>Id</u>. ¶ 21.

1

From 2005 to 2009, Ms. Fox purchased ONEIDA flatware directly from Oneida and, with Oneida's knowledge and approval, resold it on Amazon and eBay.  Id. ¶ 13.  After Robinson took over the ONEIDA brand in the United States, Ms. Fox began purchasing flatware from Robinson. She maintained what she considered to be a "very strong" business relationship with Robinson's sales manager Laurie Montalbano from 2009 to 2018.  Id. ¶ 19.  Ms. Fox purchased millions of dollars' worth of ONEIDA flatware from Robinson and resold it online.  She did so with Robinson's full approval and support.  Id. ¶ 21; Montalbano Aff. ¶¶ 9, 15.

The relationship between Ms. Fox and Robinson grew to the point that Robinson manufactured large, custom orders of flatware for Ms. Fox.  Fox Aff. ¶ 20; Montalbano Aff. ¶ 8. Robinson approved of the packaging and configurations by which Ms. Fox would resell ONEIDA products to her customers.  Fox Aff. ¶¶ 48-51; Montalbano Aff. ¶¶ 23-26.

Robinson appointed Ms. Fox in 2016 as the "brand manager" of ONEIDA flatware on Amazon.  Fox Aff. ¶ 22; Montalbano Aff. ¶¶ 12.  Being "brand manager" gave Ms. Fox authority over all ONEIDA product listings on Amazon, including control over the product details and descriptions. Fox Aff. ¶ 22; Montalbano Aff. ¶ 12.  Robinson knew and approved of Ms. Fox using the ONEIDA mark and the phrase "by Oneida" in connection with the product listings that Ms. Fox placed online. Montalbano Aff. ¶ 21-23.

The ONEIDA flatware which Ms. Fox purchased from Robinson carried a limited lifetime warranty.  Fox Aff. ¶ 29; Doc. 22-6.  Robinson authorized Ms. Fox to pass the warranty on to her customers.  Fox Aff. ¶ 31; Montalbano Aff. ¶ 16.  According to Ms. Montalbano, Robinson "had full knowledge of and approved" of Ms. Fox reselling ONEIDA flatware with the warranty being included in the sale transaction to Ms. Fox's customers.  Montalbano Aff. ¶ 16.  Ms. Montalbano reviewed and approved of the product listing details and descriptions, including the warranty language, which Ms. Fox posted for the flatware items she marketed and sold online.  Id. ¶ 19; Fox. Aff. ¶ 35.  Robinson agreed that it would honor the warranties on products resold by Ms. Fox, and it did in fact handle all warranty claims made by her customers.  Montalbano Aff. ¶¶ 16-17.

In July 2018, about the time Oneida terminated the MLA, Ms. Fox was introduced to Oneida's Director of Sales and Marketing, Stacie Wyrick.  Fox. Aff. ¶ 58.  Ms. Fox provided Ms. Wyrick and Oneida's e-Commerce Manager, Morgan Saunders, with details concerning her business and expressed her interest in continuing to purchase ONEIDA flatware for resale.  Ms. Fox explained that her business model involved reselling products online and sometimes repackaging the flatware to better

2

suit the needs of her customers.  Id. ¶ 61.  Ms. Wyrick and Ms. Saunders were impressed by Ms. Fox's business operations and expressed enthusiasm for Oneida to do business with her.  Id. ¶ 63.

In October 2018, Oneida sent Ms. Fox a letter designating her as an "authorized distributor" of flatware.  Id. ¶ 64.  The letter was followed by receipt of an Authorized Dealer Policy (ADP) in December 2018.  Ms. Fox found the ADP to be inconsistent with the understanding she had reached with Ms. Wyrick and Ms. Saunders, including their assurance that she could sell products on Amazon and eBay and could sell custom product configurations.  Id. ¶¶ 66-67.  Ms. Fox did not sign or execute the ADP.[1]  Rather, she called and emailed Ms. Saunders and Ms. Wyrick and voiced her objections to the ADP.  Ms. Saunders, with Ms. Wyrick's knowledge, specifically authorized Ms. Fox to continue to sell flatware on Amazon and eBay and to continue to sell custom configurations.  Id. ¶ 68.  Oneida also agreed to cover any warranty claims made by Ms. Fox's customers, and directed her to send her customers to Oneida for warranty claims.  Id. ¶¶ 69, 76.

From December 2018 to September 2019, Ms. Fox purchased flatware from Oneida and continued to conduct her business as she had when she purchased products from Robinson.  That is, she resold ONEIDA flatware online, sometimes in custom configurations, and passed the warranty to her customers.  Id. ¶ 69.

In October 2019, Ms. Fox was informed by Jami Decker, Oneida's new Director of Sales and Marketing, that Ms. Wyrick and Ms. Saunders were no longer employed by Oneida.  Fox Aff. ¶ 70.  Ms. Fox told Ms. Decker that she would no longer be purchasing products from Oneida and instead would concentrate on selling her existing inventory.  Id.  Shortly thereafter, Oneida notified Ms. Fox that it would enforce the ADP, which in Oneida's view meant that Ms. Fox could not sell her inventory on Amazon or eBay.  Id. ¶ 71.

The parties briefly explored the possibility of Oneida purchasing Ms. Fox's inventory.  Those efforts were unsuccessful.  Id. ¶¶ 72-73.

By letter of January 20, 2020, Oneida notified Ms. Fox that it was terminating her rights under the ADP effective March 31, 2020.  Doc. 11-4.  The letter explained that "there have been significant changes in leadership at The Oneida Group creating strategic shifts that have led us to reconsider our need and support of third-party resellers."  Id.  "As of April 1, 2020, The Oneida Group will strictly

---

[1] Plaintiff does not contest that Ms. Fox did not sign the ADP.  Plaintiff asserts that Ms. Fox "was expected to comply" with it.  Eichhorn Decl. ¶ 12.

enforce the Policy and all resellers including Finest Flatware will no longer be authorized or licensed to use ONEIDA's trademarks or copyrights." Id.

On March 10, 2020, Oneida sent Ms. Fox another letter reminding her that their relationship would be terminated on March 31.  Doc. 11-5.

In response to Oneida's letters, Ms. Fox removed the phrase "Authorized Oneida Retailer" from her online sales channels.[2]  Fox. Aff. ¶¶ 81-82.  She continued to offer ONEIDA flatware from her inventory for sale on Amazon, eBay and her business website.  Id. ¶ 79.  Her listings stated that the products were backed by a limited lifetime warranty.  Docs. 11-6, 11-7, 11-9.

On April 16, 2020, legal counsel for Oneida sent Ms. Fox a letter demanding that she cease selling ONEIDA flatware.  Doc. 11-12.  The letter reasoned that Ms. Fox could not sell flatware because she was no longer an authorized reseller.

Oneida filed this suit on April 22, seeking declaratory judgment and injunctive relief, as well as monetary damages.  Oneida asserts that Ms. Fox has violated the Lanham Act, 15 U.S.C. § 1114(1), by using the ONEIDA mark without permission in connection with the sale of flatware.  The complaint also asserts a claim for false designation of origin and false advertising under the Lanham Act, 15 U.S.C. § 1125(a), on the theory that Ms. Fox has improperly held herself out as an "Authorized Oneida Retailer" and represented in her Amazon product listings that her products are "by Oneida." The complaint further asserts a trademark dilution claim, 15 U.S.C. § 1125(c), alleging that Ms. Fox has tarnished the ONEIDA brand by purporting to sell flatware with the manufacturer's warranty when in fact the products are not covered by a warranty.  Finally, the complaint brings related claims under state law, including the Ohio Deceptive Trade Practices Act, O.R.C. § 4165.01, *et seq.*

On June 3, Oneida filed a motion for preliminary injunction, seeking to enjoin Ms. Fox from reselling ONEIDA products from her inventory.

The motion for preliminary injunction is fully briefed and the court conducted conferences and hearings by telephone on June 10, and July 8, 15, 24 and 31, 2020 in which counsel had an opportunity to supplement and clarify their legal and factual positions.

## II.    Legal Standard

Preliminary injunctions are available under Rule 65(a) of the Federal Rules of Civil Procedure. They are extraordinary remedies which are governed by the following considerations: "(1) whether

---

[2]  Ms. Fox acknowledges that she neglected to remove the "Authorized Oneida Retailer" phrase from her Facebook page until April 16, 2020.

the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a stay, (3) whether granting the stay would cause substantial harm to others, and (4) whether the public interest would be served by granting the stay." Ohio Republican Party v. Brunner, 543 F.3d 357, 361 (6th Cir. 2008); see also Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008).

"The party seeking the preliminary injunction bears the burden of justifying such relief," including showing likelihood of success and irreparable harm. McNeilly v. Land, 684 F.3d 611, 615 (6th Cir. 2012). "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." Gonzales v. Nat'l Bd. of Med. Examiners, 225 F.3d 620, 625 (6th Cir. 2000); accord Jolivette v. Husted, 694 F.3d 760, 765 (6th Cir. 2012). The movant must further show that "irreparable injury is *likely* in the absence of an injunction." Winter, 555 U.S. at 22 (emphasis in original). A mere possibility of injury is not enough. Id.

## III. Discussion

### A. Likelihood of Success on the Merits

The parties agree that the fate of plaintiff's motion for a preliminary injunction rests with the likelihood of success of its trademark claims. And the parties further agree that the merits of those claims boil down to whether Ms. Fox has the authority to resell the ONEIDA-branded flatware in her inventory. That is, the parties do not dispute many of the essential elements of plaintiff's claims – they agree that the ONEIDA mark is valid and protectible, that plaintiff owns the mark and that Ms. Fox is using the mark in connection with the sale of flatware (thus creating a likelihood of confusion among consumers unless she has authorization to use the mark). See Coach, Inc. v. Goodfellow, 717 F.3d 498, 502 (6th Cir. 2013) (elements of a trademark infringement claim); Audi AG v. D'Amato, 469 F.3d 534, 542, 547 (6th Cir. 2006) (false designation of origin and dilution).

Turning then to Ms. Fox's right to resell the flatware, the court must make an initial statement regarding the source and authenticity of the goods in Ms. Fox's inventory. Plaintiff, in its filings and in comments made by its legal counsel during certain telephone conferences, has expressed concerns about the source and authenticity of Ms. Fox's products. See, e.g. Doc. 31 p. 11-13. The court has directed the parties to engage in discovery and plaintiff will be given a fair opportunity to test these matters before a final resolution on the merits is made. But plaintiff has also stated its position that, putting aside those factual concerns, the legal issues raised in the motion for a preliminary injunction are ripe for the court's determination. See id. p. 13. Thus, for purposes of the present motion for a

preliminary injunction, Ms. Fox's affidavit is uncontested. Ms. Fox states that she purchased the products in her existing inventory from Oneida and Robinson, which was Oneida's exclusive licensee from 2009 to 2018, and that she has never purchased counterfeit goods. Fox. Aff. ¶¶ 13, 18-19, 52-53, 57, 59, 69. Defendant therefore has established at this stage that she lawfully acquired the products in her inventory and that those products are genuine ONEIDA flatware.[3]

### 1.    Authorization to Use the Mark

Even conceding for the limited purpose of the present motion that Ms. Fox lawfully acquired genuine ONEIDA flatware, plaintiff argues that the case comes down to this point: once Oneida terminated the ADP, Ms. Fox no longer had a right to resell the products in her inventory. Oneida believes that it, as the trademark owner, has the right to control the products which Ms. Fox has in her possession. In Oneida's view, Ms. Fox has three lawful choices: (1) sell her inventory to Oneida, (2) agree to become an authorized dealer and sell the product on terms set by Oneida, or (3) keep, but not sell, the items her inventory. See Doc. 25 p. 1.

The parties devote a great deal of attention, and understandably so, on the first sale doctrine, which is a defense to claims of infringement. Generally speaking, the first purchaser of a trademarked good may resell it, regardless of whether the trademark owner consents. See Brilliance Audio, Inc. v. Haights Cross Communications, Inc., 474 F.3d 365, 369 (6th Cir. 2007). Ms. Fox argues that the first sale doctrine gives her the authority to resell the products in her inventory even if Oneida has terminated the ADP. Oneida responds that the doctrine does not apply because Oneida believes the warranty ended with Ms. Fox, making the products she is trying to sell materially different from the ones she purchased. See id. at 370.

The first sale doctrine will be discussed later, but the court finds that plaintiff is unlikely to succeed on the merits for a more fundamental reason. An essential element of plaintiff's claims is that defendant used the mark without authorization. See 15 U.S.C. § 1114(1) (making it a violation to use a mark "without the consent of the registrant"); Coach, 717 F.3d at 502. The affidavits of Ms. Fox and Ms. Montalbano set forth in detail that Ms. Fox received the consent of Oneida and Robinson to: sell ONEIDA flatware online, including on Amazon and eBay; use the ONEIDA name, including the phrase "by Oneida," in her product listings; offer custom product configurations; and pass the warranty on to her customers. Fox Aff. ¶¶ 18-22, 27-41, 48-51, 67-69; Montalbano Aff. ¶¶ 6-17, 19-

---

[3] Early indications from discovery are that Ms. Fox's inventory contains at least 1,700 "different types of product," representing over 400 patterns of flatware. Doc. 31 p. 11.

26. In attempting to sell her existing inventory, Ms. Fox is merely exercising her rights according to the permission granted by Oneida and Robinson at the time she purchased the products from them.

Plaintiff has not rebutted defendant's affidavits, and though plaintiff discounts the affidavits as self-serving, "[a]ffidavits by their very nature tend to be self-serving." Lannello v. Am. Gen. Life Ins. Co., 298 F.Supp.3d 1133, 1138 (M.D. Tenn. 2018); see also Barahona–Cardona v. Holder, 417 Fed. App'x 397, 399, n.1 (5th Cir. 2011) ("[I]ndeed, it would be odd for a party to submit an affidavit that was not self-serving in the sense that it provides support for [their] claim."). The affidavits of Ms. Fox and Ms. Montalbano are not conclusory, vague, contradictory or a sham. See France v. Lucas, 836 F.3d 612, 622 (6th Cir. 2016); Aerel, S.R.L. v. PCC Airfoils, L.L.C., 448 F.3d 899, 907-08 (6th Cir. 2006); Brainard v. Am. Skandia Life Assur. Corp., 432 F.3d 655, 664 (6th Cir. 2005) (discussing instances in which a court may disregard an affidavit). Rather, the affidavits specify exactly from whom – Ms. Montalbano at Robinson and Ms. Wyrick and Ms. Saunders at Oneida – Ms. Fox received approval to resell ONEIDA flatware and what the terms of the consent were – to resell online, use the ONEIDA name, offer custom product configurations and pass on the warranty. Plaintiff will have an opportunity to challenge defendant's factual assertions, but the affidavits stand undisputed for purposes of the motion for a preliminary injunction.

Plaintiff next argues that Robinson lacked the authority to give Ms. Fox permission to resell the products on the terms she says it did. Plaintiff argues that Robinson was not Oneida's agent but only its licensee. See MLA § 9.15 (providing that the MLA did not create a principal/agent relationship). Plaintiff notes that the existence of a trademark licensing agreement alone does not create an agency relationship. See Oberlin v. Marlin Am. Corp., 596 F.2d 1322, 1327 (7th Cir. 1979).

Plaintiff is correct that Robinson was a licensee but overlooks the evidence of the consent given by Oneida's own agents, Ms. Wyrick and Ms. Saunders. Having full knowledge of the nature of Ms. Fox's business and the relationship she had with Robinson, Ms. Wyrick and Ms. Saunders approved of Ms. Fox continuing to conduct her business in the same manner and on the same terms as she had with Robinson. That is, even if Robinson exceeded its authority under the MLA in granting privileges to Ms. Fox, Oneida expressly approved of Ms. Fox reselling ONEIDA flatware online, with custom configurations and passing the warranty on to her customers. Fox. Aff. ¶¶ 67-69. Oneida did so after Ms. Fox disclosed the relevant details of her business operations to Oneida in a series of conferences and exchanges from July to September 2018 with Ms. Wyrick and Ms. Saunders. Fox. Aff. ¶¶ 58-62.

Oneida argues that by terminating its relationship with Ms. Fox it can retroactively withdraw the consent which she had received to resell the product.  However, Oneida has not sufficiently supported its position at this time.  Oneida has not, for instance, put forth evidence that upon termination of their relationship Ms. Fox was obligated to tender any unsold inventory to Oneida or give Oneida the right of first refusal.  Though the ADP provided that a dealer was to cease selling ONEIDA products upon termination of the ADP, see ADP (Doc. 11-3) § 7, Ms. Fox has submitted evidence that she never agreed to the ADP and that Ms. Wyrick and Ms. Saunders exempted her from it.

The court thus finds that plaintiff has not demonstrated a strong likelihood of success on the merits of its trademark claims.

### 2.    First Sale Doctrine

Ms. Fox asserts the first sale doctrine as a defense, contending that even if she did not receive plaintiff's consent to resell the flatware, she has the right as first purchaser to resell it.  See Brilliance Audio, 474 F.3d at 369.  The first sale doctrine, also called the first sale exhaustion rule,  "recognizes that the right of a producer to control distribution of its trademarked product does not extend beyond the first sale of the product."  Bel Canto Design, Ltd. v. MSS Hifi, Inc., 837 F.Supp.2d 208, 222 (S.D.N.Y. 2011) (internal quotation marks and citations omitted).  "The rationale for the rule is that trademark law is designed to prevent sellers from confusing or deceiving consumers about the origin or make of a product, which confusion ordinarily does not exist when a genuine article bearing a true mark is sold."  Brilliance Audio, 474 F.3d at 369 (internal quotation marks omitted).

Plaintiff objects to the application of the first sale doctrine for two reasons.  For one, plaintiff argues that the doctrine is not available to a licensee.  Plaintiff believes that Ms. Fox was a licensee under the ADP and that her rights were defined by the ADP.

The general legal principle cited by plaintiff is correct.  Because the doctrine is premised on the first sale being authorized by the trademark owner, see Microban Prod. Co. v. API Indus., Inc., No. 14 CIV. 41 KPF, 2014 WL 1856471, at **9-10 (S.D.N.Y. May 8, 2014), courts have held that the doctrine does not apply "to prior licensees after the termination of the licensing agreement."  Starin Mktg., Inc. v. Swift Distribution, Inc., No. 2:16-CV-67, 2018 WL 6659620, at *4 (N.D. Ind. Oct. 31, 2018).  The licensee acquires the goods subject to the terms of the license, and if the license prohibits a post-expiration selling of inventory by the licensee, then it cannot be said that the first sale was authorized by the trademark owner.  See Bill Blass, Ltd. v. SAZ Corp., 751 F.2d 152, 155 (3d Cir. 1984); Starin, 2018 WL 6659620, at *4.

Though correct on the legal principle, plaintiff falls short on the facts at this early stage. Plaintiff relies on the ADP, sent to Ms. Fox in December 2018, as establishing the terms of the relationship between Oneida and Ms. Fox.  Eichhorn Decl. ¶ 12.  However, the ADP was not in effect when Ms. Fox purchased a large volume of goods from Robinson from 2009 to 2018.  Robinson, as Oneida's exclusive licensee in the United States, was authorized to make the first sale to Ms. Fox. Moreover, Ms. Fox has demonstrated that she never agreed to the ADP.  Upon receipt of the ADP she "immediately" contacted Ms. Wyrick and Ms. Saunders and reached a separate understanding with Oneida.  Fox Aff. ¶¶ 67-68.  Plaintiff has not established that Ms. Fox's right to liquidate her inventory was circumscribed under the terms of the arrangement she reached with Ms. Wyrick and Ms. Saunders. The court thus finds that plaintiff has not established a likelihood of success in proving that the ADP should preclude application of the first sale doctrine.

Plaintiff's second objection is that the first sale doctrine does not apply when the first purchaser attempts to sell the product in a materially different form.  Plaintiff contends that selling a product without the warranty is a material difference.  According to Oneida's Chief Operating Officer, Mark Eichhorn, Oneida's lifetime warranty to the original purchaser is "an essential feature of its products and its brand."  Eichhorn Decl. ¶ 9.  Defendant appears to agree on the importance of the warranty to the ONEIDA brand, as she would not have resold the product without the warranty passing to her customers.  Fox. Aff. ¶ 33.

Again plaintiff's legal proposition is a sound one.  The first sale doctrine does not apply "when an alleged infringer sells trademarked goods that are materially different than those sold by the trademark owner."  Brilliance Audio, 474 F.3d at 370 (internal quotation marks and alterations omitted).  This is so because a "material difference in a product is likely to cause consumer confusion and could dilute the value of the trademark."  Id.  A missing or inferior warranty term may constitute a material difference that would defeat the first sale defense.  See, e.g., Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC, 562 F.3d 1067, 1073 (10th Cir. 2009); ABG Prime Grp., Inc. v. Innovative Salon Prod., Inc., No. 17-12280, 2018 WL 2937327, at *4 (E.D. Mich. June 12, 2018); RFA Brands, LLC v. Beauvais, No. 13-14615, 2014 WL 7780975, at *9 (E.D. Mich. Dec. 23, 2014), report and recommendation adopted, No. 13-14615, 2015 WL 519166 (E.D. Mich. Feb. 9, 2015).

Plaintiff's shortcoming, however, once more is with the facts.  Defendant has submitted unrebutted evidence that Robinson and Oneida authorized Ms. Fox to pass the warranty to her customers and that they in fact handled her customers' warranty claims.  Fox. Aff. ¶¶ 29-35, 69;

Montalbano Aff. ¶¶ 16-19.  Thus the product she would now resell from her inventory would be identical to what she purchased from Robinson and Oneida.

Accordingly, the court finds that plaintiff has failed to establish a likelihood of success in overcoming the defense of the first sale doctrine.

**B.    Irreparable Injury**

The court further finds that plaintiff is not likely to suffer an irreparable injury absent an injunction.  Plaintiff has not established that Ms. Fox is selling non-genuine or inferior goods. Defendant, in contrast, has shown that she is selling OENIDA flatware in a manner consistent with how Oneida and Robinson authorized her to resell the product.

Plaintiff also contends that defendant has engaged in false advertising by using the phrase "Authorized Oneida Retailer" in connection with her online marketing and sales.  However, the court finds that plaintiff is not likely to suffer irreparable injury related to this allegation because Ms. Fox removed all references to being an "Authorized Oneida Retailer" prior to the filing of the lawsuit. Fox. Aff. ¶¶ 81-82.  The only examples offered by plaintiff of Ms. Fox using the phrase occurred before the filing of the suit.  Eichhorn Decl. ¶¶ 19-20; Docs. 11-10, 11-11.

**C.    Other Factors**

Finally, the court finds that granting preliminary injunctive relief would harm defendant and not serve the public interest because an injunction would bar Ms. Fox from selling her lawfully-obtained goods and have an anti-competitive effect on the marketplace.

**IV.    Conclusion**

Accordingly, plaintiff's motion for a preliminary injunction (doc. 11) is DENIED.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: August 10, 2020